**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

June 27, 2024

# In the Court of Appeals of Georgia

A24A0288. IN RE: ESTATE OF LILLIAN KNIGHT, DECEASED.

MARKLE, Judge.

After Lillian Knight passed away, naming her daughter, Karen, as the executor of her estate, one of her sons sought to remove Karen and for an accounting of the estate. He also filed a petition for a declaratory judgment, seeking to establish that funds in joint accounts held by Lillian and Karen were part of the estate rather than Karen's personal property. Following a hearing, the probate court removed Karen as executor and found that there was evidence to overcome any presumption that the joint accounts belonged to her, thereby making them assets of the estate. Karen now appeals. For the reasons that follow, we reverse.

"A probate court's findings of fact after a declaratory judgment hearing are analogous to a jury verdict and will not be interfered with if there is any evidence to support them, but we review the probate court's conclusions of law de novo." (Citation and punctuation omitted.) *In re Estate of Burkhalter*, 354 Ga. App. 231, 235 (840 SE2d 614) (2020).

So viewed, the record shows that Lillian Knight died in July 2019, leaving as survivors her daughter Karen and her sons David and John.[1] In her will, Lillian named Karen as the executor of her estate, and she left Karen her jewelry and furnishings, and the house as a life estate. She bequeathed the remainder of her estate to all three children equally. Karen submitted the will to probate, but she did not distribute the estate as per the terms of the will.

John petitioned for a settlement of the estate and sought to remove Karen as executor.[2] In response, Karen submitted a list of assets, which included joint accounts

---

[1] David passed away during the pendency of this action.

[2] Karen does not appeal from the order removing her as executor.

from Ameriprise, Bank of America, and Wells Fargo.[3] She later supplemented her response to indicate that the joint accounts were not part of the estate.

Thereafter, John moved for declaratory judgment to determine if the joint accounts belonged to the estate or to Karen as the surviving account holder.[4] Following a hearing on that issue, the probate court found there was sufficient evidence to overcome a presumption that the joint accounts belonged to the surviving account holder, and instead found that the accounts were assets of the estate.[5] Karen now appeals, arguing that the probate court erred because there was not enough evidence to overcome the presumption that the joint accounts belonged to Karen. We agree.

It is well settled under Georgia law that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the

---

[3] The Ameriprise account and the Bank of America savings account were in the name of Lillian and Karen, and the other Bank of America account and the two Wells Fargo accounts were in the name of Lillian, Karen, and John.

[4] Under OCGA § 9-4-4 (a), an heir or legatee may seek a declaration of rights regarding the title to property or "[t]o determine any question arising in the administration of the estate[.]"

[5] This hearing was not transcribed. . According to Karen, the only testimony at the declaratory judgment hearing was from the temporary administrator.

estate of the decedent, unless there is clear and convincing evidence of a different intention at the time the account is created." OCGA § 7-1-813 (a); see also *Howard v. Leonard*, 330 Ga. App. 331, 336 (1) (765 SE2d 466) (2014); *Jenkins v. Jenkins*, 281 Ga. App. 756, 760 (1) (637 SE2d 56) (2006); *Godwin v. Johnson*, 197 Ga. App. 829, 830 (1) (399 SE2d 581) (1990). "'Clear and convincing evidence' is an intermediate standard of proof, greater than 'the preponderance of evidence,' but less than the 'beyond a reasonable doubt' standard applicable in criminal cases." (Citation omitted.) *In re Estate of Mobley*, 369 Ga. App. 326, 329 (1) (893 SE2d 457) (2023). Whether there is sufficient evidence to overcome the presumption is typically a question for the fact finder. *Godwin*, 197 Ga. App. at 831 (1); see also *In re Estate of Burkhalter*, 354 Ga. App. at 235 (following declaratory judgment hearing, probate court's factual findings will be upheld if there is any evidence to support them).

The only testimony in the record is from the hearing addressing the settlement of accounts and removal of the executor. Karen testified that Lillian's will provided that the three children would divide the majority of the estate equally. Lillian was the only one who deposited any funds into the accounts, and they were not used to cover expenses for anyone besides Lillian. Karen stated that Lillian managed her own

finances, but she added Karen to the account because "this was the way [Lillian] was helping me" for living with her and taking care of her for 13 years. Karen noted that Lillian had named John as a joint holder on one of the accounts, but that she later replaced John with Karen. Karen explained that Lillian added Karen and John to the accounts "[f]or when something happened to her." She denied that Lillian added her for convenience.

The only other evidence presented were the Ameriprise and Bank of America documents showing the accounts marked as "Joint with Right of Survivorship."[6]

The probate court expressed its "concern" regarding Lillian's intent, but nevertheless found clear and convincing evidence that she intended the accounts to be part of the estate. The probate court considered that (1) Lillian was the only one who deposited money into the accounts; (2) neither Karen nor John used any of the money in those accounts while Lillian was alive, and the accounts were used only to benefit Lillian; (3) only the two children who lived nearby where added to the accounts; (4) Lillian added them to her accounts around her 90th birthday; and (5) other than jewelry and the life estate in the home, the will otherwise left her estate

---

[6] The probate court also noted that none of the bank documents defined that term.

to the children equally. The probate court also noted that none of the bank documents defined joint tenant with right of survivorship.

We cannot agree with the probate court. Although these facts can show *some* indication of an intent that the accounts remain part of the estate, see *James v. Elder*, 186 Ga. App. 810, 811 (368 SE2d 570) (1988),[7] they are not *clear and convincing evidence* of such intent. *Sams v. First Nat. Bank of Atlanta*, 119 Ga. App. 96, 100-101 (2) (166 SE2d 394) (1969) (joint tenant entitled to account despite fact that she did not deposit any funds into account and money was to be used for decedent); see also *Willig v. Shelnutt*, 224 Ga. App. 530, 532 (1) (480 SE2d 924) (1997) (where none of the evidence established decedent's intent at the time the accounts were created, there was no clear and convincing evidence to overcome the statutory presumption). The very fact that the probate court had "concerns" about Lillian's intent essentially negates its finding of clear and convincing intent to overcome the presumption that the accounts belonged to Karen. OCGA § 7-1-813 (a), (e). Moreover, the record contains insufficient evidence showing Lillian's intent at the time the accounts were opened. *Buice v. Buice*, 255 Ga. App. 699, 701 (566 SE2d 421) (2002) (no clear and

---

[7] *James* has been overruled on other grounds. See *Mashburn v. Wright*, 204 Ga. App. 718, 720 (420 SE2d 379) (1992).

convincing evidence to overcome statutory presumption because previous arrangements regarding joint accounts was no indication of subsequent intent at the time joint accounts were created); compare *Gray v. Benton*, 280 Ga. App. 339, 339-340 (634 SE2d 86) (2006) (summary judgment improper where there was some evidence of contrary intent to establish joint account for decedent's convenience); *Williamson v. Echols*, 205 Ga. App. 453, 454 (1) (422 SE2d 329) (1992) (evidence sufficient to overcome presumption where there was testimony decedent had expressed that joint account was for convenience and the bank record showed there was no other joint account option); *Godwin*, 197 Ga. App. at 830-831 (1) (testimony from numerous witnesses concerning decedent's stated intent created question of fact). There was no testimony from anyone regarding Lillian's intent at the time she opened the accounts.[8] And, in reaching its conclusion, the probate court gave weight to Karen's actions *after* Lillian's death. As Karen correctly points out, her own conduct after the fact is not relevant; we are to look to Lillian's intent *at the time the accounts were created. Willig,*

---

[8] The family's financial advisor submitted an affidavit explaining only that it was Ameriprise's policy to distribute funds in a joint account to the surviving account holder. See *Urban v. Lemly*, 232 Ga. App. 259, 260-261 (1) (501 SE2d 529) (1998) (executor's statement as to ownership of joint account was not relevant to decedent's intent at the time the accounts were created and thus did not overcome presumption).

224 Ga. App. at 532 (1); see also *Howard*, 330 Ga. App. at 336-337 (1) (daughter's statement that funds belonged to mother, made years after joint account created, was not evidence to rebut presumption); *Jenkins*, 281 Ga. App. at 762 (2) (statements by joint account holder made after decedent died gave no indication about decedent's intent *at time account was created*). Given the limited evidence in the record, we cannot say that the evidence on which the probate court relied was clear and convincing evidence that Lillian intended the joint accounts to be part of the estate. *Willig*, 224 Ga. App. at 532 (1). Accordingly, we must reverse the probate court's order.

*Judgment reversed. Miller, P. J., and Land, J., concur.*